[Cite as *Vinskovich v. Vinskovich*, 2026-Ohio-2708.]

# IN THE COURT OF APPEALS OF OHIO

SEVENTH APPELLATE DISTRICT
MONROE COUNTY

CATHY ANN VINSKOVICH,

Plaintiff-Appellant,

v.

ANDREW M. VINSKOVICH, III, AS EXECUTOR OF

THE ESTATE OF ANDREW M. VINSKOVICH, II

Defendant-Appellee.

---

**OPINION AND JUDGMENT ENTRY**
**Case No. 25 MO 0009**

---

Civil Appeal from the
Court of Common Pleas, Domestic Relations Division,
of Monroe County, Ohio
Case No. 2024-240

**BEFORE:**
Carol Ann Robb, Mark A. Hanni, Katelyn Dickey, Judges.

---

**JUDGMENT:**
Affirmed in part, Reversed in part, and Remanded.

---

*Atty. Bonnie R. Conaway*, B. Conaway at Law, LLC, for Plaintiff-Appellant and

*Atty. Michael J. Shaheen,* Shaheen Law Group, LLC, for Defendant-Appellee.

Dated: July 15, 2026

**Robb, J.**

{¶1} Plaintiff-Appellant, Cathy Ann Vinskovich (Wife), appeals the judgment granting her a divorce from Defendant, Andrew M. Vinskovich, II (Husband). Wife challenges the classification of a sum of money as marital property and the valuation given to Husband's vehicle. For the following reasons, the trial court's judgment is affirmed in part, reversed in part, and remanded.

{¶2} The parties were married on July 1, 2010, and have no children together. Wife filed for divorce August 26, 2024.

{¶3} The parties agreed to the following stipulations prior to the final divorce hearing. They agreed each would retain their own retirement account and their own credit cards. They agreed the current value of the marital home was $295,000 with a mortgage balance of $79,221. The parties also stipulated the land on which the marital home was built was owned by Wife before the marriage with a value of $13,000. They agreed their commercial property was worth $145,000, and had a mortgage balance of $130,349. The parties also agreed to the division of their household goods and furnishings and they would keep their respective vehicles.

{¶4} The trial court held the final divorce hearing July 9, 2025. The parties testified as to the remaining issues. The only issues relevant to this appeal are the designation of money Wife used toward the mortgage on the marital home and the valuation of Husband's truck.

{¶5} The trial court noted Wife claimed she received $150,000 in 2013 from the sale of her premarital home and used $138,000 of that money to pay down the mortgage on the marital home. She claimed this was her separate property for which she should receive a set-off. Husband acknowledged Wife used $138,000 of her money to pay down the mortgage on the marital home, but argued she failed to adequately trace those funds. The court noted Wife presented no documentary evidence as to the sale of her premarital home or where the funds were deposited. It also noted Husband alternatively argued the payment of the $138,000 by Wife was a gift to him.

{¶6} The court found Wife failed to properly trace the $138,000 as her separate premarital property. Alternatively, the court found Wife gifted these funds to Husband.

Thus, the court rejected Wife's contention that the marital home was subject to a $138,000 set-off. It did acknowledge Wife was entitled to a $13,000 set-off, consistent with the parties' stipulations.

**{¶7}** As to the value of Husband's truck, the court found Husband owns a 2020 Chevrolet Silverado with high mileage. The court set the truck's reasonable value at $20,000. It found the difference between the value of Wife's 2022 Toyota 4Runner and Husband's truck was $18,648. The court awarded Husband one-half of the difference or $9,324.

**{¶8}** Wife appealed. Husband passed away while this appeal was pending. Appellee, Andrew M. Vinskovich, III, as Executor of the Estate of Andrew M. Vinskovich, II, was substituted for Husband. Wife raises three assignments of error. We address Wife's second assignment of error first for ease of discussion.

**{¶9}** Wife's second assignment of error states:

THE TRIAL COURT COMMITTED A REVERSIBLE ERROR WHEN IT DETERMINED THAT THE APPELLANT FAILED TO ESTABLISH THAT THE PAY DOWN FUNDS WERE TRACEABLE TO THE SALE OF HER PREMARITAL HOME.

**{¶10}** Wife asserts the trial court erred by finding she failed to properly trace the funds paid down on the mortgage as her separate premarital property. She claims she traced her separate property. Wife points to her testimony that she sold her premarital home for $150,000 and then used $138,000 of the proceeds to pay down the mortgage on the marital home. Wife states her testimony is supported by the mortgage documents and Husband's testimony.

**{¶11}** During divorce proceedings, the trial court classifies property as either marital or separate property. "Marital property" includes "[a]ll real and personal property that currently is owned by either or both of the spouses." R.C. 3105.171(A)(3)(a)(i). Marital property does not include any separate property. R.C. 3105.171(A)(3)(b).

**{¶12}** "Separate property" includes "[a]ny real or personal property or interest in real or personal property that was acquired by one spouse prior to the date of the marriage." R.C. 3105.171(A)(6)(a)(ii).

**{¶13}** We review a trial court's decision regarding whether property is marital or separate for an abuse of discretion. *Maloney v. Maloney*, 2005-Ohio-1368, ¶ 8 (2d Dist.),

citing *Neville v. Neville*, 2003-Ohio-3624. Abuse of discretion connotes more than an error in judgment; it implies the trial court's judgment is arbitrary, unreasonable, or unconscionable. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219 (1983).

**{¶14}** The party claiming property is separate bears the burden of tracing its existence. *Bechara v. Essad*, 2004-Ohio-3042, ¶ 83 (7th Dist.), citing *deLevie v. deLevie*, 86 Ohio App.3d 531, 536 (10th Dist. 1993). "The commingling of separate property with other property of any type does not destroy the identity of the separate property as separate property, except when the separate property is not traceable." R.C. 3105.171(A)(6)(b).

**{¶15}** "[C]ommingled separate property is not transmuted to marital property if the relevant financial and legal history of the property is traceable and shows that the separate nature of the property was maintained during the marriage." *Akers v. Akers*, 2015-Ohio-3326, ¶ 13 (7th Dist.), citing *Bailey v. Marrero-Bailey*, 2012-Ohio-894, ¶ 33 (7th Dist.). Transmutation only occurs if the separate and marital property are comingled and if the history of the separate property cannot be traced. *Id.*, citing *Bailey* at ¶ 33.

**{¶16}** Here, the trial court found Wife deeded a 2.165-acre tract of land to herself and Husband, joint and survivor. This transfer occurred after they were married when they decided to construct a new home. On December 14, 2012, the parties took out a $234,000 mortgage for the construction of their home. The mortgage lists both parties as borrowers. In September 2013, they refinanced the construction mortgage in both of their names. The parties stipulated the current value of the marital home is $295,000 with a mortgage balance of $79,221. All pay downs of the mortgage occurred during the marriage. (Oct. 6, 2025 Judgment Entry).

**{¶17}** The court further found Wife sold her premarital home in June 2013. It noted Wife initially testified she then paid $150,000 toward the mortgage on the marital home. The court found significant, however, that Wife was unable to submit documentation showing exactly when she sold her premarital home, the purchase price, what she netted from the sale, where she deposited the proceeds, or what she did with the money prior to September 2013, when the parties refinanced their mortgage. The court emphasized Wife admitted on cross-examination that there was never an exact payment of $150,000 on any loan document. The court noted Husband testified that he too sold premarital

property. And the court found significant this question posed to Wife: "You were both married. You took in that money, paid some bills, did some things, and then both of you spent money on building and upgrading your house. True?" And Wife answered "Yes." (Tr. 120). In response to interrogatories, Husband stated Wife used $138,000 from the sale of her premarital home to pay down the mortgage on the marital home. (Tr. 179). The court noted there was no clarification as to where these funds were located at the time Wife sold her premarital home in June 2013 until the mortgage was paid down in September 2013. (Oct. 6, 2025 Judgment Entry).

{¶18} The court found Wife failed to trace these funds, explaining:

There was absolutely no evidence of such except for [Wife's] testimony. There was no documentation she actually received those paid funds from the sale of her premarital property, no evidence of how they were handled or dealt with from the time of sale in June, 2013, to when the Citizens Bank mortgage was executed by the parties for their joint loan in September, 2013 . . . We don't know what happened with those funds from the time of sale of her premarital home in June, 2013, to September, 2013, when the Citizens bank mortgage for $96,000.00 was executed nor from what source the pay down proceeds were made.

(Oct. 6, 2025 Judgment Entry).

{¶19} The evidence as to Wife's premarital funds includes the following. Wife testified the marital home is titled in both parties' names as is the mortgage. (Tr. 45-46). The parties took out the first mortgage on the construction loan for $234,000 in 2012. (Tr. 49-50; Ex. 1). In June of 2013, Wife sold her premarital home for $150,000. (Tr. 51). Several months later, in September 2013, the parties refinanced their mortgage. (Tr. 51-59). Wife initially stated she paid the $150,000 from the sale of her premarital home toward the mortgage. (Tr. 59). It was later clarified her home sold for $150,000, and her $138,000 profit was used to pay down the mortgage on the marital home. (Tr. 179).

{¶20} Wife also testified Husband sold two pieces of real estate during the marriage. (Tr. 59). She was asked the following on direct examination:

Q. Did you ever talk to [Husband] about the premarital home and the money that you put on the mortgage?

A. Yes.

Q. Okay. What was the conversation?

A. Well, back in 2009, I got diagnosed with M.S.

And I wasn't sure where – how disability, how far that disability was going to go or anything.

And he was also diagnosed with chronic kidney disease.

And as we thought we were aging, I told him I thought it was best if I sold my home, and built a one-level home. You know, more maintenance free for us and everything.

And he thought that was a good idea. He was concerned about paying for it. And I said I will put my hundred and fifty thousand towards that home. That way, the cost would not be that much.

And he was okay with me putting my hundred and fifty down.

Q. Okay. And then did he sell his home?

A. He had a trailer in Centerville, I believe, and he sold that, and then he had mortgaged – or property in Barnesville, that he sold.

. . .

Q. Okay. And what did he do with the money from those sales?

A. I'm not really sure because that I considered his money, and he always done what he wanted to do with the money that he had.

(Tr. 62-63).

{¶21} On cross-examination, Wife agreed the parties made certain improvements during the marriage with joint funds, including constructing a metal building, adding a driveway, and upgrading a pond on the property. (Tr. 117-119). Counsel for Husband then asked Wife:

Q. First of all, you would agree with me, there was never an exact payment of $150,000 on any loan document. True or false?

A. That is true.

Q. Next, do you have with you today . . . a check that shows money coming from a closing directly to that loan obligation?

A. I don't know if it's in a closing, no.

Case No. 25 MO 0009

Q. Okay. So you sold property just like he did?

A. Uh-huh.

Q. You were both married. You took in that money, paid some bills, did some things, and then both of you spent money on building and upgrading your home. True?

A. Yes.

(Tr. 119-120).

**{¶22}** Husband testified about selling premarital property on direct examination:

Q. Is it true that during the course of the marriage you sold two tracts of property?

A. Yes.

Q. Is it true that during the course of the marriage your Wife sold a piece of property?

A. Yes.

Q. When you sold your two properties, what did you do with the money?

A. Put it in the checking account. And we paid bills with it.

Q. So that was a joint checking account?

A. Joint.

. . .

Q. Okay. Your Wife's testimony was that that account that you usually used, paid the mortgage and household expenses. Is that true?

A. Yes.

. . .

Q. Would you agree with me that all of the mortgages, and all of the farm expenses were accrued during marriage?

A. Yes.

Q. And all of the pay down on all those obligations occurred during marriage?

A. Yes.

Q. Did you hold back any of the money from your separate sales?

A. No.

(Tr. 163-165).

{¶23} Wife's counsel then cross-examined Husband on the subject:

Q. . . . You guys bought a marital home together?

A. Yes.

Q. And it was a construction loan?

A. Yes.

Q. And we agree, we've all stipulated it was $234,000, correct?

A. Yes.

Q. Okay. And then you agree that [Wife] sold her home?

A. Yes.

Q. Okay. And then do you remember the interrogatories that you answered, they were questions asked [by Wife's] previous attorney, that you had to answer. Do you remember that?

A. (No Audible Response).

Q. If I would give you a copy, would that refresh your memory?

A. It might.

. . .

Q. . . . So on this question, it says you and Plaintiff refinanced the marital home for $96,000 at Citizens Bank in September 2013 after Plaintiff paid a hundred and thirty-eight thousand.

A. Yes.

Q. And you admitted that?

A. Yes.

Q. Okay. Where did that one hundred and thirty-eight thousand come from?

A. The sale of the home.

Q. Okay. From her home?

A. Her home.

. . .

Q. But you don't agree that her home is her money?

A. Her - the one she sold. . .

Q. Uh-huh.

A. Yes.

Q. Yes, you don't agree with that, or yes, you agree that it is her money?

A. Well, it is.

Q. It is her money?

A. Yes.

(Tr. 178-179, 181).

{¶24} Husband was then asked the following on redirect:

Q. . . . Do you agree with me that at some point there was a payment during your marriage of a hundred and thirty-eight thousand dollars towards the mortgage?

A. Yes.

Q. Okay. And at some point there were payments by you towards the mortgage obligation from the sale of your real estate too, right?

A. Yes.

Q. Okay. Did you ever see a check from a sale of either one of your properties directly to the mortgage company?

A. No.

Q. Okay. So all you know is what the balance is today and what it started?

A. Yes.

Q. And both of you put money towards paying it down?

A. Yes.

(Tr. 190-191).

{¶25} The burden was on Wife to trace the existence of her alleged separate property. *Bechara*, 2004-Ohio-3042, at ¶ 83 (7th Dist.), citing *deLevie*, 86 Ohio App.3d at 536 (10th Dist. 1993). The trial court abused its discretion finding she did not meet this burden.

**{¶26}** Wife initially testified she paid $150,000 from the sale of her premarital home toward the mortgage on their new home. It was later confirmed her separate amount paid was actually $138,000. Husband likewise agreed in his answers to interrogatories and stated in his trial testimony that Wife used $138,000 from the sale of her premarital home to pay down the parties' mortgage. Their testimony left no doubt as to the source of the funds. "[C]ommingled separate property is not transmuted to marital property if the relevant financial and legal history of the property is traceable and shows that the separate nature of the property was maintained during the marriage." *Akers v. Akers*, 2015-Ohio-3326, ¶ 13 (7th Dist.).

**{¶27}** Traceability of separate property can be established by testimony alone. *West v. West*, 2002-Ohio-1118, *5 (9th Dist.). Supporting documentation, while helpful, is not required. *Wolfangel v. Wolfangel*, 1995 WL 312697, *2 (9th Dist. May 24, 1995). While this record does not contain bank deposit slips or mortgage documents depicting the use of the $138,000 toward the parties' new home loan, it does contain both parties' testimony that the source of the funds was separate property.

**{¶28}** Moreover, the parties agreed Wife told Husband she would put the proceeds from the sale of her premarital home toward the cost of their new one before they decided to build it. She made this statement to quell Husband's concerns about affording a new home. The parties agreed this was their plan and they acted consistent with it. Thus, the parties agreed the source of the $138,000 used to pay down the mortgage was separate property.

**{¶29}** No documentary evidence of traceability was required because both parties testified the money came from the sale of Wife's premarital house. The parties' consistent and uncontroverted testimony that the $138,000 was Wife's separate, premarital property adequately traced the $138,000 as such. The trial court's holding to the contrary, requiring Wife to come forward with documentary evidence in addition to the parties' consistent and uncontroverted testimony, is unreasonable and constitutes an abuse of discretion. *State v. Brady*, 2008-Ohio-4493, ¶ 23 (defining an abuse of discretion as "a view or action that no conscientious judge could honestly have taken"). Documentation tracing separate property is not required when the parties agree about the source of the funds. Thus, Wife's second assigned error has merit.

{¶30} Wife's first assignment of error states:

THE TRIAL COURT COMMITTED A REVERSIBLE ERROR WHEN IT DETERMINED THAT THE APPELLANT HAD THE REQUISITE DONATIVE INTENT WHEN SHE PAID DOWN THE JOINT MORTGAGE WITH $138,000 FROM THE SALE OF HER PREMARITAL HOME.

{¶31} Wife also challenges the trial court's alternative finding that she gifted the $138,000 paid on the mortgage to Husband. Wife contends there was no evidence of her donative intent. She also claims this finding was contrary to the evidence presented, which showed the $138,000 was her premarital property. Wife points to her own testimony that she did not intend this sum to be a gift and she never told Husband it was a gift. Wife claims the trial court relied on a single statement instead of considering the entirety of the testimony. For the following reasons, we agree.

{¶32} To establish an inter vivos gift, one must establish: 1) the donor intended to make an immediate gift; 2) delivery of the property to the donee; and 3) acceptance of the gift by the donee. *Hippely v. Hippely*, 2002-Ohio-3015, ¶ 14 (7th Dist.), citing *Lauerman v. Destocki*, 87 Ohio App.3d 657, 665 (1993), and *Bolles v. Toledo Trust Co.*, 132 Ohio St. 21 (1936). In evaluating whether one spouse intended to make a gift of premarital property to the other, this court has stated the donee has the burden of showing by clear and convincing evidence the donor made the inter vivos gift "with the intention of waiving all rights and interest he/she may have had in the gift items as martial property." (citations omitted.) *Hippely* at ¶ 14.

{¶33} The focus of the inquiry is donative intent. *Sweeney v. Sweeney*, 2000 WL 799095 (9th Dist. June 21, 2000), citing *Helton v. Helton*, 114 Ohio App.3d 683, 685 (1996); *Moore v. Moore*, 83 Ohio App.3d 75, 78 (1992). Donative intent is established if a donor intends to transfer a present possessory interest in an asset. *Dever v. Dever* 1999 WL 527843 (12th Dist. July 12, 1999). Intent means "the state of mind accompanying an act, esp. a forbidden act. While motive is the inducement to do some act, intent is the mental resolution or determination to do it." INTENT, *Black's Law Dictionary* (12th ed. 2024). Whereas "donative intent" is defined as "[t]he intent to surrender dominion and control over the gift that is being made." INTENT, *Black's Law Dictionary* (12th ed. 2024).

**{¶34}** Husband, as the donee, had the burden of coming forward with clear and convincing evidence of Wife's donative intent. Thus, he had to come forward with positive proof of donative intent. There is no presumption in Ohio that a spouse's contribution toward a marital asset makes the funds a gift to the other spouse. To the contrary—R.C. 3105.171(H) states: "[e]xcept as otherwise provided in this section, the holding of title to property by one spouse individually or by both spouses in a form of co-ownership does not determine whether the property is marital property or separate property."

**{¶35}** The trial court found Wife showed her donative intent when she told Husband she would pay funds from the sale of her home toward their new home on property placed in their joint names. The court also found delivery of the gift by Wife and acceptance of the gift by Husband. In discussing whether Wife intended to gift the funds from the sale of her premarital home to Husband, Wife's counsel asked her:

Q. Okay. And the $150,000 that you got from the sale of your home, did you consider it a gift?

A. No.

Q. Okay. Why not?

A. Because it was a premarital asset.

Q. Did you ever tell [Husband] it was a gift?

A. No.

(Tr. 60).

**{¶36}** Wife also testified that when she was diagnosed with multiple sclerosis and Husband was diagnosed with chronic kidney disease, she approached Husband and told him she thought it was best if they built a single-story home and Husband agreed. (Tr. 62). She stated Husband was concerned about the cost, however, and she told him "I will put my hundred and fifty thousand towards that home. That way, the cost would not be that much. And he was okay with me putting my hundred and fifty down." (Tr. 62-63).

**{¶37}** And Husband later testified on direct examination:

Q. Did your Wife ever say to you I expect you to pay me back money I put in from my separate sale?

A. No.

Q. Did you ever tell her you wanted paid back?

Case No. 25 MO 0009

A. No.

Q. Was it a gift from you to her?

A. Yes.

Q. Did you believe it was a gift from her to you?

A. Yes.

(Tr. 165). Notwithstanding this testimony on direct examination, Husband testified on cross-examination that he used the profits from the sale of his separate property to pay bills and to purchase a side-by-side vehicle and a trailer for the vehicle. He later sold those items and kept the money. (Tr. 180.)

**{¶38}** The evidence was that the parties had a discussion about their health conditions and decided they should build a single-story home. When Husband expressed concern over the cost, Wife reassured him by telling him she would use money from the sale of her premarital home to reduce the cost.

**{¶39}** The fact that Wife placed her money into a jointly titled asset to lower the cost of the parties' mortgage is not sufficient evidence of a gift to the marital estate. R.C. 3105.171(H). This, without more, fails to show she relinquished dominion or control over the funds. Further, this court has held the execution of a deed making property jointly owned is one factor to consider when assessing transmutation; it is not conclusive. *Hippely* at ¶ 16-18.

**{¶40}** The parties' history does not support Husband's contention that the money was a gift. Instead, the parties maintained separate accounts during the marriage. The evidence showed they had separate spending during the marriage. Further, the parties agreed the value of the vacant land should remain Wife's separate property. Moreover, there was no evidence the parties gifted large sums of money to each other during the marriage.

**{¶41}** In fact, other evidence shows a history of Wife loaning money to Husband with him repaying her with money and labor. Their history supports the conclusion the money from the sale of her home was not intended as a gift. Donative intent is more likely to be present when the transaction is consistent with a history or pattern of gift giving between the parties. And the lack of history of gifts or similar transactions supports a finding there was no donative intent here.

Case No. 25 MO 0009

**{¶42}** Wife testified she entered the marriage with zero debt. Whereas, Husband owed $81,000. Wife explained how she loaned him $81,000 upon learning about the high rate of interest he was paying on a debt. This $81,000 was not a gift. Husband repaid her $20,000 and worked on her premarital property as repayment. Wife testified he replaced the windows on her premarital house and built a porch. She said Husband not only did the labor, but also paid for the windows. They did not have a written agreement about this loan arrangement, but Wife considered his work in this regard as repayment. (Tr. 60-62.)

**{¶43}** Furthermore, both Wife and Husband agreed that when Husband sold his premarital property, a trailer and another property with a mortgage, Husband purchased a side-by-side vehicle and trailer with the proceeds. Both parties also testified that when the parties decided to divorce, Husband sold the trailer and the side-by-side vehicle and kept the money as his own. Wife did not ask for this money because she considered it his separate property. Husband agreed Wife did not ask for the money from the sale, which he kept. (Tr. 179-181; 63-64.)

**{¶44}** Wife also testified about maintaining a separate bank account for her royalties and farming expenses. She maintained a separate account at a different bank for the first ten years of their marriage. Wife later added Husband's name for convenience purposes only since Husband went into town multiple times a day while she preferred to stay home and farm. Wife stated she earned about $9,000 in royalties in 2024. She considered farming a hobby and said it was therapy for her multiple sclerosis, and it helped her recover from the disease. (Tr. 65.)

**{¶45}** Additionally, Wife testified about maintaining her farm equipment as separate property. Because it was separate, she agreed to be solely responsible for the HELOC loan associated with these items. (Tr. 84-85; 105-107.)

**{¶46}** Husband's only "evidence" was his statement that he *believed* his Wife's intent was a gift; he did not offer evidence or details explaining the reason for this belief. His state of mind is not the standard—the focus is *Wife's* state of mind and intent. *Hippely*, at ¶ 14. Absent some evidence showing Wife's intent to waive all rights and interest in her separate $138,000, the trial court does not get to weigh the credibility of the witnesses. This is not a credibility issue between Husband and Wife. Instead, the issue is whether

Husband met his burden of proof, by clear and convincing evidence, that Wife intended the transfer to be a gift to him. *Id.*

**{¶47}** In *Hippely*, we found sufficient evidence of donative intent. In that case, we relied on husband's statements to his ex-wife that he wanted to give her a "security blanket" and that she would not have to worry about their prenuptial agreement. *Id*. at ¶ 19-20. His statements in this regard, plus the execution of the joint and survivorship deed, were sufficient indicators of his intent. *Id.*

**{¶48}** Unlike *Hippely*, this record is devoid of evidence demonstrating Wife had the mental resolution to gift $138,000 to the marital estate. Husband testified he *believed* the $138,000 was a gift; she testified it was not a gift. Husband's testimony was conclusory and provided no details showing how he reached his belief. Neither party testified they ever discussed her donative intent. Thus, Husband's testimony as to his belief, without more, is not evidence of Wife's intent or state of mind accompanying her act of paying down the mortgage and does not trigger a credibility analysis.

**{¶49}** "An *inter vivos* gift occurs when the donor executes 'an immediate voluntary, gratuitous and irrevocable transfer of property' to the donee." *Frederick v. Frederick*, 2000 WL 522170, *7 (11th Dist. March 31, 2000), citing *Smith v. Shafer*, 89 Ohio App.3d 181, 183 (3d Dist. 1993). Here, there was nothing evidencing Wife intended to give Husband immediate and irrevocable control over the money.

**{¶50}** Because Husband failed to establish a necessary element of an inter vivos gift, Wife's first assigned error has merit.

**{¶51}** Wife's third assignment of error states:

THE TRIAL COURT ERRED WHEN IT FAILED TO TAKE INTO ACCOUNT ALL OF THE RELEVANT FACTORS IN DIVIDING THE EQUITY IN THE MARITAL VEHICLES AND PLACING A VALUE ON THE APPELLEE'S TRUCK.

**{¶52}** Here, Wife asserts the trial court erred in finding it was equitable to award the one-half difference of the equity between the parties' vehicles to Husband. More specifically, Wife contends the trial court abused its discretion when it valued Husband's truck because the value was not supported by the evidence. She claims the parties presented conflicting evidence as to the appropriate value of the truck. Moreover, Wife claims the court should have taken into consideration the fact that she loaned Husband

several thousand dollars to purchase the truck and Husband received 20 to 40 cents per gallon for many of the miles he put on the truck.  For the following reasons, we disagree.

**{¶53}** We review factual determinations assessing the value of marital property under a manifest weight of the evidence standard.  *Fenstermaker v. Fenstermaker*, 2005-Ohio-5604, ¶ 13-14 (11th Dist.).  The trial court's judgment will not be reversed as against the manifest weight of the evidence if it is a judgment supported by some competent, credible evidence.  *C.E. Morris Co. v. Foley Constr. Co.*, 54 Ohio St.2d 279, (1978), Syllabus.  This standard is highly deferential and even "some" evidence will be sufficient to sustain the judgment and prevent a reversal.  *Barkley v. Barkley*, 119 Ohio App.3d 155, 159 (4th Dist. 1997).

**{¶54}** The trial court ordered both parties were to keep the vehicle in their possession.  It noted there were no liens on either vehicle.  It made the following findings as to the vehicles.  Wife owns a 2022 Toyota 4Runner with an agreed value of $38,648. Husband owns a 2020 Chevrolet truck with high mileage.  After some dispute by the parties, the court set the truck's value at $20,000 as being reasonable.  The difference then between the vehicles' values is $18,648.  The court awarded Husband one-half of the difference of the vehicles' values or $9,324.

**{¶55}** Wife testified she owns a 2022 Toyota 4Runner.  (Tr. 85-86).  It has 40,000 miles and has been in two accidents.  (Tr. 86, 113).  The Kelley Blue Book value for Wife's vehicle is $38,648.  (Ex. E-1).  The parties stipulated to this value.  (Tr. 87-88).

**{¶56}** Husband testified he owns a 2020 Chevrolet Silverado with 194,000 miles. (Tr. 184-185).  He agreed with Wife's counsel that the value of his truck was between $15,000 and $35,000.  (Tr. 187).  He then agreed with his counsel that it was worth approximately $20,000.  (Tr. 190).

**{¶57}** Husband submitted a Kelley Blue Book valuation, which listed a value of $16,835.  (Ex. E-2).  He testified, however, that the Blue Book value was for a regular cab, but his truck has a crew cab.  (Tr. 184-186).  Husband agreed because his truck has a crew cab with more options, its value is slightly higher than that listed in the exhibit.  (Tr. 186-187).

**{¶58}** Based on the evidence, the trial court's judgment is supported by some competent, credible evidence.  The Kelley Blue Book value submitted was $16,835 for a

2020 Chevrolet Silverado with a regular cab. But Husband stated that his truck had a crew cab instead of a regular cab, which increased its value. The trial court took this into consideration as it set the value of Husband's truck at $20,000. This value is also consistent with Husband's testimony.

**{¶59}** Because competent, credible evidence exists to support the trial court's judgment, we cannot find it was against the weight of the evidence. Wife's third assignment of error is without merit and is overruled.

**{¶60}** In light of the foregoing, the trial court's judgment is affirmed in part and reversed in part and remanded. On remand, the trial court shall issue a new final divorce decree and include the determination that the $138,000 constitutes Wife's separate property. As a result, the trial court must also recalculate the division of assets and debts accordingly.

Hanni, J., dissents with dissenting opinion.

Dickey, J. concurs.

Hanni, J., dissenting with dissenting opinion.

**{¶61}** With regard and respect to my colleagues, I must dissent in part from the majority opinion.

**{¶62}** I would find that Wife's first and second assignments of error lack merit. I concur with the majority's resolution of Wife's third assignment of error. Therefore, I would affirm the trial court's judgment in total.

**{¶63}** As to Wife's second assignment of error, based on the evidence, I would conclude that the trial court did not abuse its discretion in finding that Wife was unable to trace the proceeds from the sale of her premarital home. As the trial court pointed out, there was no documentary evidence to support Wife's testimony. Husband did agree that Wife used $138,000 from the sale of her premarital home towards the marital mortgage. But this was a different figure than the $150,000 Wife stated she used. And neither party was able to trace the funds from the sale of Wife's premarital home to the payment of the mortgage on the marital home. The testimony on this point was vague and suggested that both parties sold some property and used the money to pay joint expenses including the mortgage and other bills. Several months passed from the time Wife sold her premarital home until the time the parties refinanced their loan. And there is no indication on the record what Wife may have done with the proceeds from the sale of her premarital home during this time.

**{¶64}** In examining another case where there were no records tracing the alleged separate property, this Court found:

> In this case, neither party kept accurate records of either their financial additions to the property or to the money or resources that were taken out of the property. It was unmistakably clear from the record that both parties made substantial contributions to the property after they were married, and both parties were also responsible for the added debt burden placed on the property after the marriage began. However, records containing the exact details of those contributions were not kept. Without such records to specifically detail how the farm property that was brought into the marriage was kept exclusively as separate property, the trial court

could not trace the separate nature of the property and correctly ruled that the farm and the 1.6 acre homestead were marital property.

*Bailey v. Marrero-Bailey*, 2012-Ohio-894, ¶ 34 (7th Dist.).

**{¶65}** The burden here was on Wife to trace the existence of her alleged separate property. *Bechara v. Essad*, 2004-Ohio-3042, ¶ 83 (7th Dist.), citing *deLevie v. deLevie*, 86 Ohio App.3d 531, 536 (10th Dist. 1993). I would find the trial court did not abuse its discretion in finding she did not meet this burden.

**{¶66}** As to Wife's first assignment of error, I would conclude the trial court did not abuse its discretion in finding that the $138,000 paid on the mortgage was a gift from her to Husband. The trial court found that Wife showed her donative intent when she told Husband she would pay funds from the sale of her home toward their new home on property placed in their joint names. The court also found delivery of the gift by Wife and acceptance of the gift by Husband.

**{¶67}** In discussing whether Wife intended to gift the funds from the sale of her premarital home to Husband, Wife's counsel asked her:

> Q. Okay. And the $150,000 that you got from the sale of your home, did you consider it a gift?
>
> A. No.
>
> Q. Okay. Why not?
>
> A. Because it was a premarital asset.
>
> Q. Did you ever tell [Husband] it was a gift?
>
> A. No.

(Tr. 60).

**{¶68}** Wife also testified, however, that when she was diagnosed with multiple sclerosis and Husband was diagnosed with chronic kidney disease, she approached Husband and told him she thought it was best if they built a single-story home and Husband agreed. (Tr. 62). She stated Husband was concerned about the cost, however, and she told him "I will put my hundred and fifty thousand towards that home. That way,

the cost would not be that much.  And he was okay with me putting my hundred and fifty down."  (Tr. 62-63).

**{¶69}**  And later Husband later testified:

Q.  Did your Wife ever say to you I expect you to pay me back money I put in from my separate sale?

A.  No.

Q.  Did you ever tell her you wanted paid back?

A.  No.

Q.  Was it a gift from you to her?

A.  Yes.

Q.  Did you believe it was a gift from her to you?

A.  Yes.

(Tr. 165).

**{¶70}**  I would find that the evidence here supports the trial court's finding of a gift. The evidence was that the parties had a discussion about their health conditions and decided they should build a single-story home.  When Husband expressed concern over the cost, Wife reassured him by telling him she would use money from the sale of her premarital home to help off-set the cost.  Husband testified that he considered this a gift. And while Wife testified that she did not consider this a gift, it was up to the trial court to judge their credibility.  *See Kalain v. Smith*, 25 Ohio St.3d 157, 162 (1986).

**{¶71}**  Witnesses' demeanors, the timing of their responses, their facial expressions, and the like are matters that bear on credibility and are observable by the trier of fact, but not by an appellate court.  *In re V.L.M.*, 2011-Ohio-6641, ¶ 73 (7th Dist.), quoting *Rohrbaugh v. Rohrbaugh*, 136 Ohio App.3d 599, 607 (7th Dist. 2000).  For this reason, appellate courts give deference to the trial court in determining the credibility of testimony.  *Id.*, citing *Seasons Coal Co., Inc. v. City of Cleveland* (1984), 10 Ohio St.3d 77, 81.  Because the trial court was in the best position to listen to Husband and Wife and observe them during their testimony, I would defer to the trial court's belief of Husband's testimony that any money Wife put toward the marital mortgage was a gift.

Case No. 25 MO 0009

**{¶72}** For these reasons, I would affirm the trial court's judgment.

[Cite as *Vinskovich v. Vinskovich*, 2026-Ohio-2708.]

_____

For the reasons stated in the Opinion rendered herein, it is the final judgment and order of this Court that the judgment of the Court of Common Pleas, Domestic Relations Division of Monroe County, Ohio, is affirmed in part, reversed in part, and remanded. On remand, the trial court shall issue a new final divorce decree and include the determination that the $138,000 constitutes Wife's separate property. As a result, the trial court must also recalculate the division of assets and debts accordingly, according to law and consistent with this Court's Opinion. Costs to be taxed against the Appellee.

A certified copy of this opinion and judgment entry shall constitute the mandate in this case pursuant to Rule 27 of the Rules of Appellate Procedure. It is ordered that a certified copy be sent by the clerk to the trial court to carry this judgment into execution.

## NOTICE TO COUNSEL

**This document constitutes a final judgment entry.**